# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOM SHALOM, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>BASHAR MASRI, *et al.*,<br><br>    Defendants. | Civil Action No. 25-cv-01024 |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO SERVE DEFENDANT BASHAR MASRI BY ALTERNATIVE MEANS**

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND ................................................................................................................2

ARGUMENT .........................................................................................................................................3

    I.    THE PROPOSED METHODS OF SERVICE NEED ONLY "MINIMIZE OFFENSE" TO FOREIGN LAW ................................................................................................... 3

    II.   THE PROPOSED METHODS OF SERVICE DO NOT OFFEND ISRAELI LAW ...... 4

        A.    Plaintiffs' proposed methods of service do not violate Israel's reservations under the Hague Service Convention. ....................................................................................... 4

        B.    Plaintiffs' proposed methods of service do not "offend" Israeli domestic law. .......... 6

    III.  THE PROPOSED METHODS OF SERVICE MINIMIZE OFFENSE TO ANY PALESTINIAN LAW ................................................................................................... 7

        A.    The Palestinian National Authority is not a signatory to the Hague Service Convention. ................................................................................................................. 7

        B.    The State of Israel assumes responsibility for service of process in the Palestinian Territories. ................................................................................................................ 8

        C.    Plaintiffs' proposed methods of service minimize offense to Palestinian domestic law. ............................................................................................................................. 9

    IV.  THE PROPOSED METHODS OF SERVICE ARE JUSTIFIED UNDER THE CIRCUMSTANCES ................................................................................................... 11

CONCLUSION ..................................................................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adidas AG v. Individuals, Partnerships & Unincorporated Associations*,
   No. 19-cv-61264 (UU), 2019 WL 7841807 (S.D. Fla. May 23, 2019) ................................. 4, 5

*Chen v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A*,
   No. 23-cv-61597 (CIV) (RS), 2024 WL 5433914 (S.D. Fla. Oct. 2, 2024) ........................... 5, 6

*Elsalameen v. Bank of Palestine, P.L.C.*,
   No. 16-cv-1976 (ABJ), 2018 WL 11671139 (D.D.C. May 25, 2018) ....................................... 8

*Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*,
   766 F.3d 74 (D.C. Cir. 2014) ...................................................................................................... 1

*Juniper Networks, Inc. v. Bahattab*,
   No. 07-cv-1771 (PLF), 2008 WL 250584 (D.D.C. Jan. 30, 2008) ........................................... 11

*Kadic v. Karadzic*,
   70 F.3d 232 (2nd Cir. 1995) ........................................................................................................ 8

*Knox v. Palestinian Liberation Organization*,
   306 F. Supp. 2d 424 (S.D.N.Y. 2004) ........................................................................................ 8

*Livnat v. Palestinian Authority*,
   851 F.3d 45 (D.C. Cir. 2017) ....................................................................................................... 8

*Moriarty v. Hashemite Kingdom of Jordan*,
   No. 18-cv-2649 (CKK), 2024 WL 3010850 (D.D.C. June 14, 2024) .................................... 3, 4

*NorthStar Moving Holding Co. v. Northstar Movers*,
   No. 19-cv-62176 (WPD), 2019 WL 9093463 (S.D. Fla. Dec. 17, 2019) ................................... 5

*Pen Pal, LLC v. Mizra*,
   No. 23-cv-2871 (SDM) (CMV), 2024 WL 3841213 (S.D. Ohio Aug. 15, 2024) ...................... 6

*Prewitt Enters., Inc. v. OPEC*,
   353 F.3d 916 (11th Cir. 2003) ..................................................................................................... 1

*Rio Properties, Inc. v. Rio Intl. Interlink*,
   284 F. 3d 1007 (9th Cir. 2002) ................................................................................................. 11

*Troell v. Binance Holdings Ltd.*,
   No. 24-cv-07136 (JAV), 2025 WL 1415808 (S.D.N.Y. May 16, 2025) .................................... 6

*United States ex rel. Barko v. Halliburton Co.*,
   952 F. Supp. 2d 108 (D.D.C. 2013) .................................................................................. 3, 4, 7

*Williams-Sonoma Inc. v. Friendfinder, Inc.*,
   No. 06-cv-06572 (JSW), 2007 WL 1140639 (N.D. Cal. Apr. 17, 2007) ............................. 5, 11

**Rules**

Fed. R. Civ. P. 4(f) ............................................................................................................................ 3

Fed. R. Civ. P. 4(f)(3) ............................................................................................................... 1, 3, 4

Plaintiffs respectfully submit this supplemental memorandum in support of their Motion pursuant to Federal Rule of Civil Procedure 4(f)(3) to serve defendant Bashar Masri ("Masri") by the alternative means of publication, e-mail, and social media messaging ("Motion for Alternative Service," ECF No. 14). Plaintiffs seek permission to serve Masri via the alternative methods of service, as Masri is likely resident in the Palestinian Territories, but without any physical address known to Plaintiffs.

This Court asked Plaintiffs to "address[] whether any of their proposed methods of service violate Israeli and/or Palestinian law." July 2, 2025, Minute Order. The alternative methods of service do not violate Israeli or Palestinian law because neither jurisdiction prohibits alternative methods of service, distinguishing this case from *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 84 (D.C. Cir. 2014). As explained in *Freedom Watch*, Rule 4(f)(3) requires that "*an earnest effort* should be made to devise a method of communication that is *consistent with due process and minimizes offense to foreign law*." 766 F.3d at 82 (quoting *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916, 927 (11th Cir. 2003)) (emphases in *Prewitt*). The court found that the plaintiff failed to minimize offense to Austrian law as required under Rule 4(f)(3) because the proposed service methods would violate specific and explicit prohibitions under Austrian law, including the Austrian Service of Documents Act § 11(2) and the OPEC Headquarters Agreement, constituting a "substantial affront to Austrian law" rather than minimizing offense. *Id.*

Here, in contrast, there is no equivalent to the Austrian Service of Documents Act § 11(2) or the OPEC Headquarters Agreement discussed in *Freedom Watch*. On the contrary, Plaintiffs' proposed methods are consistent with both Israeli and Palestinian legal frameworks for alternative service, thereby not only satisfying Rule 4(f)(3)'s requirement to minimize offense to foreign law,

but in *harmony* with the generally flexible approach to service of process applied by both the State Israel and the Palestinian National Authority.

## FACTUAL BACKGROUND

The relevant factual background is detailed in Plaintiffs' Motion for Alternative Service, including Plaintiffs' efforts to serve Masri in the United States. *See* ECF No. 14. The Motion for Alternative Service also sets forth how Masri has given multiple interviews commenting publicly on the allegations in Plaintiffs' Complaint since Plaintiffs filed suit on April 7, 2025, and how these published interviews suggest that Masri travels regularly to Israel and is likely a resident of the Palestinian Territories (currently), and aware of Plaintiffs' Complaint. *See id.*[1] In light of Plaintiffs' diligent but fruitless efforts to serve Masri in the United States, along with his regular travel to Israel and presumed residence in territory controlled by the Palestinian National Authority, Plaintiffs request approval to effectuate service of process on Masri as follows:

(1) Publication of the Complaint and Summons in an Israeli newspaper of general circulation (including its online version), in particular, *Yediot Ahronot* (the same newspaper which Masri gave an interview in and is thus likely to read);
(2) E-mailing the Complaint and Summons to four e-mail addresses Plaintiffs have identified and believe belong to Masri; and
(3) Transmitting the Complaint and Summons to Masri's verified Instagram, X, and Facebook accounts.

On July 2, 2025, this Court requested supplemental briefing addressing whether any of Plaintiffs' proposed methods violate Israeli and/or Palestinian law, *see* July 2, 2025, Minute Order; Plaintiffs address this issue in this Supplemental Brief.

---

[1] Mr. Masri is a highly sophisticated party who travels on privately chartered aircraft and appears to travel extensively throughout the Middle East and Europe.

2

**ARGUMENT**

Federal Rule of Civil Procedure 4(f)(3) grants this Court broad discretion to order an alternative method of service to be effectuated upon a defendant located in a foreign country, so long as the proposed method of service is not prohibited by international agreement and is reasonably calculated to give notice to the defendant. *See* Fed. R. Civ. P. 4(f). While the selected method of service should "'*minimize* offense to foreign law,' [it] need not avoid it completely." *Moriarty v. Hashemite Kingdom of Jordan*, No. 18-cv-2649 (CKK), 2024 WL 3010850, at *4 (D.D.C. June 14, 2024) (emphasis in original) (citing *United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 117 (D.D.C. 2013)). Plaintiffs' proposed methods of service minimize offense to foreign law as they are consistent with Israeli law's accommodating approach to alternative service. And, while Palestinian law is not directly relevant because the United States does not recognize Palestine as a sovereign state and the Palestinian National Authority is not a signatory to the Hague Service Convention (and hence service of any kind in the Palestinian Territories is not prohibited by international agreement), it appears to expressly authorize electronic service of process without any showing that traditional methods have failed (and to permit publication service with such showing). Plaintiffs' proposed methods of alternative service on Masri by publication, e-mail, and social media are justified under the circumstances and should be permitted.

**I.    THE PROPOSED METHODS OF SERVICE NEED ONLY "MINIMIZE OFFENSE" TO FOREIGN LAW**

Federal Rule of Civil Procedure 4(f)(3) permits courts to authorize alternative service "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f). If no international treaty prohibits the service method and if the alternative service comports with due process, as is the case here, courts have discretion to permit it. *See Adidas AG v. Individuals, Partnerships &*

3

*Unincorporated Associations*, No. 19-cv-61264 (UU), 2019 WL 7841807, at *2-3 (S.D. Fla. May 23, 2019) ("[T]he decision to issue an order allowing service by alternate means lies solely within the discretion of the district court.") (internal citation and quotation marks omitted). As explained in Plaintiff's Motion for Alternative Service, service by publication, e-mail, and social media are not prohibited by international agreement, have frequently been permitted by federal courts for serving defendants located abroad, and comport with due process (especially given Masri is already on notice of the lawsuit). *See generally* ECF No. 14.

While the Advisory Committee Notes to Rule 4 state that "an earnest effort should be made to devise a method of communication that . . . minimizes offense to foreign law," as explained in *Halliburton*, 952 F. Supp. 2d at 117, this does ***not*** require the proposed method of service to be explicitly allowed under local law. *See id*. (quoting Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment). In *Halliburton*, the defendants pointed out that "Jordanian law does not allow service by email," but the court permitted it nonetheless; as there was no international agreement to the contrary, the court took foreign law into consideration, and found that e-mail service minimized offense under the circumstances. *Id*. Similarly, in *Moriarty*, this Court just recently permitted service by newspaper publication in Jordan, noting that "service must only 'minimize offense to foreign law,' not avoid it completely." 2024 WL 3010850, at *4.

II.     **THE PROPOSED METHODS OF SERVICE DO NOT OFFEND ISRAELI LAW**

    A.     **Plaintiffs' proposed methods of service do not violate Israel's reservations under the Hague Service Convention.**

Plaintiffs' proposed methods of service are not prohibited by international agreement under Fed. R. Civ. P. 4(f)(3). Israel is a signatory to the Hague Service Convention, which does not prohibit alternative service methods like e-mail or publication, even where the signatory has objected to alternative service methods identified in Article 10. If a signatory "has objected to the

4

alternative means of service provided by the Hague Convention, that objection is expressly limited to those means *and does not represent an objection to other forms of service, such [as] email or publication.*" *NorthStar Moving Holding Co. v. Northstar Movers*, No. 19-cv-62176 (WPD), 2019 WL 9093463, at *1 (S.D. Fla. Dec. 17, 2019) (emphasis added). Israel has objected to specific service under sub-sections (a), (b) and (c) of Article 10.[2] However, these objections do not extend to other means of service that are not specifically referenced in Article 10, including e-mail, publication, and social media messaging.

As the court explained in *Adidas AG*, "[t]o determine whether an international agreement prohibits service via e-mail or Internet posting against a defendant in … Israel … the Court will examine the Hague Convention." 2019 WL 7841807, at *3. The court concluded that the Hague Service Convention did not prohibit service on the defendants by e-mail or website publication. *See id.* Similarly, the court in *NorthStar* explained that "Israel has not objected to service via email, therefore the requested service method of email is not prohibited." 2019 WL 9093463, at *1; *see also Williams-Sonoma Inc. v. Friendfinder, Inc.*, No. 06-cv-06572 (JSW), 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) ("The Court concludes that WSI has demonstrated that service via email is not prohibited by an international agreement [upon defendants located in Israel.]"). And, in *Chen v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A*, the court authorized service against an Israeli defendant via e-mail, marketplace messaging, and web publication, finding the methods "not prohibited by international agreement" and noting that Israel is a signatory to the Hague Convention. No. 23-cv-61597 (CIV) (RS), 2024 WL 5433914, at *1

---

[2]     Israel will only accept service through the Directorate of Courts, and only when the request comes from a judicial authority or diplomatic/consular representation of a contracting state. Israel also objects to direct postal service, but only for documents addressed to the Israeli government itself. *See Declaration/Reservation/Notification*, Hague Conference on Private International Law, *available at* https://www.hcch.net/en/notifications/?csid=405&disp=resdn (last visited July 31, 2025).

(S.D. Fla. Oct. 2, 2024). *See also id*. (noting that "Israel [has] not objected to service by e-mail, electronic messaging, or Internet publication"); *Pen Pal, LLC v. Mizra*, No. 23-cv-2871 (SDM) (CMV), 2024 WL 3841213, at *3 (S.D. Ohio Aug. 15, 2024) (finding "no indication that service by publication in Israel is prohibited by any international agreement").

      **B.**      **Plaintiffs' proposed methods of service do not "offend" Israeli domestic law.**

Plaintiffs' proposed methods of service not only "minimize offense to foreign law," they are consistent with the approach taken to alternative service under domestic Israeli law.

As set forth in the accompanying Declaration of Israeli attorney Gil Wojakowski ("Wojakowski Decl."), service of process in Israel is governed by Civil Procedure Regulations 5779-2018 ("2018 Regulations"), which ordinarily permits electronic service where the recipient has provided written consent. *See* Wojakowski Decl. ¶ 9 (citing 2018 Reg. 162(1)). Israel also permits service by mail and personal delivery, where an address is known. *See id*. ¶ 12 (citing 2018 Reg. 161(3)).

The Wojakowski Declaration also describes how Israeli courts possess broad authority to order alternative service when conventional service methods fail. Under the 2018 Regulations, judges can authorize virtually any alternative service method they deem appropriate to the circumstances, including social media or publication. *See id*. ¶¶ 13-15 (citing 2018 Reg. 164(a) and (b)).

Notably, alternative service under Israeli law closely tracks Rule 4(f)(3), which confers the court with broad discretion to "fashion [a] means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Troell v. Binance Holdings Ltd.*, No. 24-cv-07136 (JAV), 2025 WL 1415808, at *2 (S.D.N.Y. May 16, 2025).

Although Rule 4(f)(3) does ***not*** require the proposed method of service to satisfy Israeli domestic law, the circumstances here are such that alternative service would be warranted under Israeli law because Plaintiffs' previously-filed motion and declaration detail their service attempts and reflect that Masri travels extensively and has no known home address in the Palestinian Territories. *See* ECF No. 14 and 14-1; Wojakowski Decl. at ¶ 15. Further, according to the Israeli Ministry of Justice, the Palestinian National Authority is not presently cooperating with Hague service requests and may therefore be prepared to attempt service via e-mail as well.

Accordingly, as the Wojakowski Declaration concludes:

> In light of Israeli law's generally flexible approach to effectuating service, its willingness to permit broad methods for substitute service when necessary, and its cooperative (rather than restrictive) approach to accommodating international requests under the Hague Convention, the proposed alternative service methods would not violate Israeli law or give offense to Israeli legal principles. These methods align with, rather than contradict, Israeli legal values.

Wojakowsi Decl. ¶ 40.

### III. THE PROPOSED METHODS OF SERVICE MINIMIZE OFFENSE TO ANY PALESTINIAN LAW

#### A. The Palestinian National Authority is not a signatory to the Hague Service Convention.

Like the Kingdom of Jordan discussed in *Haliburton*, the Palestinian National Authority is not itself a signatory to the Hague Service Convention. In *Haliburton,* the "Court took foreign law into consideration and limited any offense to Jordanian law," noting that while "[s]ervice by email might be improper if this Court were located in Jordan … without an international agreement to the contrary, this Court can authorize a plaintiff to serve a defendant by the necessary means per Rule 4(f)(3)." 952 F. Supp. 2d at 117. The court concluded that "[t]he means of service are not prohibited by international agreement and were deemed appropriate by the Court." *Id.*

Moreover, unlike the Kingdom of Jordan, the United States does not recognize the Palestinian National Authority as a sovereign state, thus further reducing the consideration of offense to foreign law.[3]

### B. The State of Israel assumes responsibility for service of process in the Palestinian Territories.

As described in the Wojakowski Declaration, while the Palestinian National Authority is not a signatory to the Hague Service Convention, Israel serves as the conduit for requests for judicial assistance from Hague Convention signatory states for service in the Palestinian Territories. *See* Wojakowski Decl. ¶¶ 21, 22 (citing Israel - Central Authority & Practical Information for the Hague Service Convention[4]). *See also Elsalameen v. Bank of Palestine, P.L.C.*, No. 16-cv-1976 (ABJ), 2018 WL 11671139 (D.D.C. May 25, 2018) (Israel specifically "asserts jurisdiction to execute service of process under the Hague convention in areas subject to the jurisdiction of the Palestinian National Authority").

Israel's method for doing so involves utilizing the bilateral cooperation framework established under the Oslo Accords and subsequent agreements, whereby the Israeli Administration of Courts coordinates with the Palestinian National Authority to effect service. *See* Wojakowski Decl. ¶¶ 23, 27. Article IV of Annex IV to the Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip (Oslo II, 1995) is dedicated to "Service of Documents," and

---

[3] The D.C. Circuit Court has acknowledged that "[t]he United States does not recognize the Palestinian Authority as a government of a sovereign state." *Livnat v. Palestinian Authority*, 851 F.3d 45, 47 (D.C. Cir. 2017). Because "Palestine is not a foreign entity politically recognized by the United States . . . [it is] not one entitled in our courts to be accorded all the privileges and immunities of sovereign states to which this country, acting through the executive branch, does confer formal recognition." *Knox v. Palestine Liberation Organization*, 306 F. Supp. 2d 424, 430 (S.D.N.Y. 2004); *see also Kadic v. Karadzic*, 70 F.3d 232, 244 (2d Cir. 1995) ("Recognized states enjoy certain privileges and immunities relevant to judicial proceedings.").

[4] *Available at* https://www.hcch.net/en/states/authorities/details3/?aid=260 (last visited July 31, 2025) (providing directive for "documents intended for residents of the Palestinian Authority").

8

outlines the responsibilities of both sides for serving legal documents, including subpoenas, issued by the judicial organs under the responsibility of the other side. *See id.* ¶ 27.

Israel subsequently enacted legislation to facilitate service of process under Article IV of Annex IV, titled the Emergency Regulations (Judea and Samaria and Gaza Strip - Jurisdiction over Offenses and Legal Aid) (Palestinian Council Areas - Legal Aid in Civil Matters), 5759-1999 (the "Order"). *See id.* ¶ 28. A certified translation of that Order is attached to the Wojakowski Declaration as Exhibit C.

The Order provides for alternative methods of service if the primary method of delivering the judicial documents to the Palestinian National Authority for service is not feasible. The alternative methods include appointing another individual for personal service or sending the document via registered mail or by facsimile, and if those methods are unsuccessful, publication and affixing the document to the regional offices of Israel's Civil Administration in Judea and Samaria. *See id.* ¶¶ 30-31 (citing Sec. 3 of the Order). The Wojakowski Declaration concludes that the alternative methods would be countenanced given the present lack of cooperation by the Palestinian National Authority. *See id.* ¶ 33.

    **C.**    **Plaintiffs' proposed methods of service minimize offense to Palestinian domestic law.**

It is extremely difficult to retain a Palestinian law expert who would submit a declaration in a case brought by victims of the October 7, 2023, attacks in Israel, given Hamas's strong presence in the West Bank and the significant attendant risks to any declarant's personal safety in being perceived as a collaborator. However, Plaintiffs have reviewed the Code of Civil and Commercial Procedure which governs "all civil and commercial court cases, claims, motions and challenges before the regular courts in Palestine." Code of Civil and Commercial Procedure

9

Promulgated by Law No. 2 of 2001 (the "2001 Code"),[5] as amended by the Law Decree No. (24) of 2024 amending the Civil and Commercial Procedures Law No. (2) of 2001 and its amendments (the "2024 Code").[6]

The 2001 Code appears to allow for notification of a lawsuit brought within the Palestinian Territories through a process server, registered letter with return-receipt-requested through the clerk of court, or "any other method as determined by the court in accordance with the provisions of the present law." 2001 Code, Art. 7. However, "if the court finds that service of process in accordance with the aforesaid procedures is impossible," and there is "no known domicile" for the individual, the court may permit the documents to be posted "on the courthouse bulletin board and another copy in a prominent place at the last domicile or workplace of the person on whom process is required to be served, *as well as to publish a brief announcement in a daily newspaper.*" *Id.*, Art. 20(1)-(2) (emphasis added).

The 2024 Code appears to have transformed this already flexible framework by elevating electronic methods from potential alternatives to primary service options. Article 3 of the 2024 Code, amending Article 7 of the 2001 Code, now provides that "notification may be made by sending a text message on a cell phone, by e-mail, or by using one of the approved electronic means in accordance with the provisions of the system for electronic notification." The 2024 Code also appears to clarify the legal effectiveness of electronic service. Article 13(4)(A) establishes that electronic notification "shall be deemed to have legal effects from the day following the date of receipt." The 2024 Code authorizes publication "in two local daily newspapers, as determined

---

[5] An uncertified English translation of the 2001 Code is available at https://web.archive.org/web/20250226095755/https://legal.pipa.ps/files/server/ENG%20Law%20on%20Civil%20and%20Commercial%20Procedures%20No_%20(2)%20of%202001.pdf (last visited July 31, 2025).

[6] The 2024 Code is available at https://maqam.najah.edu/legislation/1812/ (last visited July 31, 2025).

by the Supreme Judicial Council for this purpose, and on their websites or on any approved website affiliated with the Supreme Judicial Council" if electronic notification is impossible. Art. 14(1).

Accordingly, service of process by electronic e-mail and publication appears to be explicitly permitted by Palestinian law.

IV.   **THE PROPOSED METHODS OF SERVICE ARE JUSTIFIED UNDER THE CIRCUMSTANCES**

Courts have found the alternative service methods all the more reasonable when traditional service methods proved ineffective and the circumstance of the case called for alternative means. For example, the court in *Juniper Networks, Inc. v. Bahattab* permitted service by e-mail where plaintiff attempted to serve the defendant via FedEx and personal service in Saudi Arabia, and the defendant "appear[ed] to have some sort of notice of the existence of [the] case." No. 07-cv-1771 (PLF), 2008 WL 250584, at *1 (D.D.C. Jan. 30, 2008). Similarly, the court in *Williams-Sonoma Inc.* concluded that "the circumstances warrant alternative service" where "WSI has presented evidence that physical addresses for a number of the named defendants cannot be located or that defendants have refused to accept service." 2007 WL 1140639, at *2. And, in *Rio Properties, Inc. v. Rio Intl. Interlink*, 284 F.3d 1007, 1017-18 (9th Cir. 2002), the court concluded that service by e-mail was "reasonably calculated to apprise [defendant] of the pendency of the action and afford it an opportunity to respond," because where the defendant is "playing hide-and-seek with the federal court, email may be the only means of effecting service of process." *Id*.

As explained in Plaintiff's Motion for Alternative Service, Plaintiffs attempted to effectuate service on Masri in the United States by several means and while exercising reasonable diligence, without success. *See generally* ECF No. 14. And the proposed methods of service are reasonably calculated to apprise Masri of the action against him, including because he has given

11

interviews about the lawsuit in the same newspaper in which Plaintiffs propose service by publication; further, his social media accounts were recently active. *See id*. at pp. 6-7.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve alternative service of process on Masri by publication in Israel, e-mail, and social media.

August 1, 2025

Respectfully submitted,

**OSEN LLC**

By: /s/ Gary M. Osen
Gary M. Osen (D.C. Bar No. NJ009)
190 Moore Street, Suite 272
Hackensack, NJ 07601
Telephone: (201) 265-6400
Facsimile: (201) 265-0303
gosen@osenlaw.com

**WILLKIE FARR & GALLAGHER LLP**
Lee Wolosky (D.C. Bar No. NY0161)
787 7th Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
lwolosky@willkie.com

**STEIN MITCHELL BEATO & MISSNER LLP**
Jonathan E. Missner (D.C. Bar No. 475648)
Robert Gilmore (D.C. Bar No. 492424)
2000 K St., NW, Suite 600
Washington, D.C. 20006
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
jmissner@steinmitchell.com
rgilmore@steinmitchell.com

          **MOTLEY RICE LLC**
          John M. Eubanks (D.C. Bar No. SC0013)
          Michael E. Elsner
          28 Bridgeside Blvd.
          Mt. Pleasant, SC 29464
          Telephone: (843) 216-9250
          Facsimile: (843) 216-9450
          jeubanks@motleyrice.com
          melsner@motleyrice.com